IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

REBECCA L. DAWDY                                                    PLAINTIFF

V.                              CASE NO. 5:24-CV-5168

JAY CANTRELL, in his Official Capacity as
Washington County Sheriff                                          DEFENDANT

<u>OPINION AND ORDER</u>

Now before the Court is Defendant Jay Cantrell's Motion for Summary Judgment (Doc. 43).[1] For the reasons that follow, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

Plaintiff Rebecca Dawdy brings a claim for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, based on Defendant's failure to promote her in 2022, and a claim for retaliation in violation of the Arkansas Whistle-Blower Act, Arkansas Code § 21-1-603, based on Defendant's failure to promote her in 2024.

In 2022, Dawdy was a Lieutenant at the Washington County Sheriff's Office ("WCSO"). (Doc. 54, ¶ 1; Doc. 56, ¶ 43). At that time, WCSO was divided into two divisions, Enforcement and Detention, with one Major and two Captains over each division. (Doc. 56, ¶ 11). In March 2022, the two Captain positions in the Detention Division opened up, and in May 2022, then-Sheriff Tim Helder discussed with Defendant, then-Sheriff-Elect Jay Cantrell, that it was time to fill these positions. *Id.* ¶¶ 12–13. Helder delegated the promotion decision to Cantrell, subject to Helder's oversight. *Id.* ¶ 14.

---

[1] The Court has also reviewed the parties' briefs, statements of fact, and exhibits (Docs. 44, 46 & 54–58).

Cantrell testified that he told Detention Division Major Randall Denzer that he (Cantrell) would pick one of the Captains, and Denzer would pick the other. (Doc. 58-6, pp. 73:15–74:9 (Cantrell Dep.)).[2] Cantrell later stated in an affidavit that Major Denzer was not a decisionmaker; he merely provided input. (Doc. 46-1, ¶¶ 49–51). Denzer testified that he merely gave his input but believed Helder made the final decision. (Doc. 58-9, p. 21:1–10 (Denzer Dep.)).

Ten qualified applicants submitted letters of interest: two women, Rebecca Dawdy and Amanda Arnold, and eight men including the two men who were ultimately selected, Kevin East and Nolan Ake. (Doc. 56, ¶ 18). Every qualified applicant who submitted a letter of interest was interviewed. *Id.* ¶ 19.

Dawdy testified that, prior to the interviews, she told Denzer she was interested in the promotion but her expression of interest was "cut short with, 'Well, it takes a special kind of woman to be a captain.'" (Doc. 58-8, p. 59:2–14 (Dawdy Dep.)).[3] She did not report said statement until her deposition. In her Complaint, she alleged that Denzer "stated, to another Sheriff's Office employee, that it would take a special kind of woman to work for him." (Doc. 29, ¶ 17). Another Lieutenant, Steven Ridenoure, also testified that in May, Denzer entered a shop where a group of people, men and women, had been making sandwiches for a fundraiser and said either "'Keep the damn women out of here,' or 'Get

---

[2] Pin cites for depositions are based on the internal page numbers. For all other documents, pin cites are based on the file-marked page numbers.

[3] Defendant asserts that this is inadmissible hearsay. Dawdy is plainly not offering Denzer's purported statement for its truth, so it is not hearsay. Moreover, when offered by Dawdy, Denzer's statements are likely admissible as opposing party's statements under Federal Rule of Evidence 801(d)(2)(D).

the damn women out of here.'" (Doc. 58-10, pp. 23:16–24:13 (Ridenoure Dep.)).[4] Denzer denies making this statement. (Doc. 58-3, p. 6)

The interviews were conducted by Sheriff Cantrell, Major Denzer, and Enforcement Division Major Kenneth Yates. (Doc. 56, ¶ 20). Sheriff Helder did not participate in the interviews. Per the Washington County Employee Handbook, "[a]ll Applicants for the same position must be asked the same interview questions." (Doc. 58-2, p. 7). Cantrell did not believe this provision applied to this promotion decision. (Doc. 58-6, p. 63:15–22 (Cantrell Dep.)). Yates did not recall a list of questions being used in the interviews, and no such list was produced. (Doc. 58-7, pp. 19:24–20:1 (Yates Dep.)).

In addition to the Handbook, WCSO has also adopted the Washington County Sheriff's Office Policy Manual. (Doc. 54, ¶ 18). The Manual states that performance "[e]valuations will be a deciding factor when determining merits raises, transfers, promotions, job assignments, or job retention." (Doc. 58-4, ¶ 26.6). Dawdy received higher performance evaluation scores than East and Ake in the five years preceding the promotion, except for 2022, when East and Dawdy received the same score. (Doc. 54, ¶ 21). But Cantrell and Denzer did not look at performance evaluations in the promotion process. *Id.* ¶¶ 22, 24. Cantrell did, however, solicit feedback from detention sergeants, asking them to rank the ten candidates. Defendant has provided the feedback for Dawdy but not for the two candidates who were selected. The feedback is in an anonymized

---

[4] This statement is also not offered for its truth and is therefore not hearsay. Like Denzer's other statements, when offered by Dawdy it is likely admissible as an opposing party's statement under Rule 801(d)(2)(D).

format, and there is no evidence in the record about who made these rankings, so this feedback is inadmissible hearsay. (Doc. 46-1, pp. 40–41).[5]

After the interviews, Sheriff Cantrell and Major Denzer met with Sheriff Helder to discuss the promotion decision. (Doc. 46-2, ¶ 14).[6] Each interviewer provided their top five, in alphabetical order, as follows:

Cantrell: Ake, Arnold, East, Falslev, Henson;

Denzer: Ake, Arnold, East, Falslev, Rennie;

Yates: Dawdy, East, Falslev, Frisard, Henson.

(Doc. 46-1, p. 42). During an internal investigation after the promotions were made,[7] they reported their top three as follows:

Cantrell: Falslev, East, Henson;

Denzer: Falslev, Arnold, East;

Yates: Falslev, Dawdy, East.

(Doc. 58-3, p. 2). Notably, Ake did not appear in anyone's top three as reported during the investigation. More recently, however, Denzer has asserted that his first choice was Ake, followed by Arnold. (Doc. 46-4, ¶ 10; Doc. 54, ¶ 9). Helder had his own list of top candidates which included East and Arnold but did not include Dawdy. (Doc. 46-2, ¶¶ 19–

---

[5] Defendant has not offered any explanation or evidence from which the Court could conclude the feedback falls within a hearsay exception.

[6] Helder reported that Yates also participated in this meeting. (Doc. 46-2, ¶ 14). Yates, for his part, testified that he participated in the interviews and provided his top five list, but had no further input. (Doc. 58-7, pp. 28:24–29:8 (Yates Dep.)). This dispute is not material.

[7] Dawdy filed an internal complaint of sex discrimination after she was not promoted, which was referred to the Fayetteville Police Department for an independent human resources investigation. (Doc. 54, ¶ 3; Doc. 58-3).

20). He did not share this list with Cantrell, Denzer, or Yates. *Id.* ¶ 18. Ultimately, East and Ake were selected for the promotion. Helder told investigators that Ake was a concession to what Denzer wanted since Denzer was over the jail. (Doc. 58-3, p. 5).

After the promotion decision was made, Denzer informed Dawdy that she was not selected. Dawdy "asked what [she] needed to improve on and he couldn't tell [her] anything," so she "told him that [she] felt like this is because [she] was a woman." (Doc. 58-8, p. 40:19–21 (Dawdy Dep.)). According to Dawdy, Denzer responded "It's the same for you and Amanda [Arnold]. Y'all are both women." *Id.* at p. 19:22–23.[8] Dawdy then went to Cantrell's office to ask why she was not promoted. She testified that Cantrell told her "he had to make a concession; and he said he has to work with Randall [Denzer] too." *Id.* at p. 94:2–7. Cantrell then told her that "Randall [Denzer] picked Nolan [Ake] and that he [Cantrell] picked Kevin [East]." *Id.* at p. 94:14–15.[9]

Dawdy also alleged that she was retaliated against in a 2024 promotion decision for blowing the whistle on another employee for unauthorized use of WCSO equipment. Defendant moves for summary judgment on this claim, too. Dawdy does not defend it in her response, so the Court will not recite the factual history except to say that she admits she has no evidence Defendant knew she was the whistleblower at the time he decided not to promote her. (Doc. 56, ¶¶ 74–75).

---

[8] Like his other statements, when offered by Dawdy Denzer's statements are likely admissible as opposing party's statements under Rule 801(d)(2)(D). Whether to believe Dawdy's testimony that these statements were made is a credibility question left to the jury.

[9] When offered by Dawdy, Cantrell's purported statements are also admissible as opposing party's statements under Rule 801(d)(2).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Nat'l Bank of Com. of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999) (quoting Fed. R. Civ. P. 56). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

"To be material, a fact must 'affect the outcome of the suit under the governing law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient' to survive summary judgment." *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Liberty Lobby*, 477 U.S. at 252). The moving party bears the burden of proving the absence of any material factual disputes and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The Court must base its determination of whether a genuine issue of material fact exists on "evidence that will be admissible at trial. [T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it

could be presented at trial in an admissible form." *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (alteration in original) (internal quotations and citations omitted).

### III.  DISCUSSION

With respect to the 2022 promotions, Defendant has not met his burden of proving his entitlement to judgment as a matter of law because Plaintiff has produced direct evidence of discrimination.

"[A] plaintiff may survive the defendant's motion for summary judgment in one of two ways. The first is by proof of 'direct evidence' of discrimination." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

> Direct evidence of discrimination "is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." "Stray remarks," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process" do not constitute direct evidence.

*Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012) (first quoting *Torgerson*, 643 F.3d at 1044; and then quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring in judgment)). Dawdy points to Major Denzer's statement that "it takes a special kind of woman to be a captain" as direct evidence of discrimination. The Court agrees.

Defendant resists this conclusion, claiming this comment constitutes a stray remark by a nondecisionmaker. The context of the remark—in response to Dawdy expressing interest in the promotion—makes clear that the statement was related to the decisional process. And Dawdy has presented evidence that Denzer was a decisionmaker—both Helder and Cantrell, the purported superior decisionmakers, have made statements to the effect that Ake was Denzer's choice. Cantrell also testified that

he gave Denzer one pick—his subsequent affidavit to the contrary notwithstanding. *Cf. Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983) ("If testimony under oath, however, can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment."). A reasonable jury could conclude that Denzer was, in fact, a decisionmaker. Because there is a genuine factual dispute on this question, the Court need not determine whether Defendant could also be liable under a cat's paw theory.[10]

Defendant also contends that this comment does not evince discriminatory intent, noting that "Denzer did not use derogatory language or slurs when referring to women." (Doc. 44, p. 6). If Denzer had instead said, "You cannot be a captain because you are a woman," that also would not use derogatory language or slurs, and yet it would still evince discriminatory intent. Requiring women to meet a "special" standard for promotion that men are not required to meet is sex discrimination, and making a statement to that effect is evidence of discriminatory intent.

Finally, Defendant disputes that this comment was actually made. Dawdy did not report this comment until her deposition. Her Complaint states that Denzer said "it would take a special kind of woman to work for me." (Doc. 29, ¶ 17). Being that the Captain position Dawdy applied to would report directly to Denzer, either version of the statement

---

[10] The Court notes for Defendant's benefit that evidence of manipulation of the ultimate decisionmaker is not required to prevail on a cat's paw theory. *See Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013) ("In a cat's paw case, an employer may be vicariously liable for an adverse employment action if one of its agents—other than the ultimate decision maker—is motivated by discriminatory animus and intentionally and proximately causes the action."); *Russell v. City of Kansas City*, 414 F.3d 863, 867 n.1 (8th Cir. 2005) (finding fact issue where there was "at least some evidence" that the ultimate decisionmaker "was a mere conduit, or perhaps an inattentive rubber stamp").

supports a conclusion that Denzer's decision was motivated by discriminatory animus against women. Defendant's attack on Dawdy's deposition testimony presents a credibility question which the Court cannot resolve on summary judgment. *Liberty Lobby*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

The Court need not reach the second way of surviving summary judgment, the *McDonnell Douglas* burden-shifting framework, since direct evidence sufficient to overcome summary judgment is present. Defendant is not entitled to summary judgment with respect to the 2022 promotions.

However, Dawdy did not respond to Defendant's Motion with respect to the 2024 promotions and had made fatal admissions, namely that she has no evidence Defendant was aware of her whistleblowing when he made the challenged decision. Defendant has shown that there is no genuine dispute of material fact as to this claim and that he is entitled to judgment as a matter of law. Dawdy's Arkansas Whistle-Blower Act claim is therefore **DISMISSED**.

## IV.  CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 43) is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's second cause of action (Doc. 29, ¶¶ 30–34) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 4th day of June, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE

9